## Reaney *v.* Jones, Appellant.

*Negligence—Automobiles—Injury to pedestrians—Contributory negligence—Case for jury.*

In an action to recover damages for personal injuries sustained by a pedestrian, who was struck by an automobile, the case is for the jury and a verdict for the plaintiff will be sustained, where the evidence is that the plaintiff was walking along a highway on a

Syllabus—Arguments.    [75 Pa. Superior Ct.

dark and rainy night and was struck by the defendant's motor car with such force that she was wedged between the bumper and radiator of the defendant's car and carried for a distance of 150 to 200 feet. It was a question for the jury to decide whether the defendant should have seen the plaintiff walking in the road, and drove her car with due care for the rights of others using the highway.

Argued October 14, 1920. Appeal, No. 212, Oct. T., 1920, by defendant, from judgment of C. P. Phila. Co., Dec. T., 1918, No. 4206, on verdict for plaintiff in the case of Josephine Reaney v. Edith Jones. Before Orlady, P. J., Porter, Henderson, Trexler, Keller and Linn, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Patterson, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $500. The court directed a remittitur of $100 and judgment was entered. Defendant appealed.

*Error assigned,* among others, was the refusal of defendant's motion for judgment non obstante veredicto.

*G. Von Phul Jones,* for appellant.—There was no evidence of negligence on the part of the defendant and the mere proof of the accident is not sufficient to take the case to a jury: Presser et al. v. Dougherty, 239 Pa. 312; Davis v. Osborn, 62 Pa. Superior Ct. 291; Smith v. Phila. Rapid Transit Co., 252 Pa. 435; Kline v. Traction Co., 181 Pa. 276; Kelley v. Phila. & Reading Ry. Co., 214 Pa. 82.

The plaintiff was guilty of contributory negligence: Warruna v. Dick, 261 Pa. 602; Virgilio v. Walker & Brehm, 254 Pa. 241; Harris v. Ice Co., 153 Pa. 278; Smith v. Phila. Rapid Transit Co., 252 Pa. 435.

355, (1921).]    Arguments—Opinion of the Court.

*W. F. Ellwanger,* for appellee, cited: Dougherty v. Davis, 51 Pa. Superior Ct. 229; Goldie v. Pittsburgh & L. E. R. R. Co., 44 Pa. Superior Ct. 350; Cameron v. Citizens Traction Co., 216 Pa. 191; McConnell v. Penna. R. R. Co., 223 Pa. 442; Stegmaier v. Keystone Coal Co., 225 Pa. 221; Hastings v. Speer, 34 Pa. Superior Ct. 478; 1 Chitty's Pleading 222; DeKyne v. Smith, 42 Pa. Superior Ct. 11.

OPINION BY LINN, J., March 5, 1921:

Plaintiff, while walking on York Road on a dark rainy evening, was struck and injured by defendant's automobile. There was a verdict and judgment for plaintiff. Defendant appealed and now contends that (1) the record is so destitute of evidence of negligence by defendant that the jury should not have been permitted to find that fact; and (2) plaintiff's conduct in the circumstances was so clearly negligent as to require the court to find that fact and not to submit the evidence on that subject to the jury. It is urged that we now find either fact in accord with appellant's contention and enter judgment for appellant.

Plaintiff and defendant had the right to use the highway, and the verdict establishes that while exercising that right, defendant failed to perform some duty incident to its enjoyment. Duty required due care in the circumstances. Due care depends upon the legal probability that injury will result if such care be not observed. We must then inquire what if anything was done or omitted by defendant which at the time she should have considered as likely in a legal sense to cause damage in the circumstances in which she exercised her right? What, if any, negligence could the jury have found? In answering that question the authorities require us to consider established all facts which the jury could find from the evidence. They will appear by brief quotations from the record. Plaintiff said "It was raining and the lights were all lit on York Road. Every-

thing was plain to be seen, and I was......hurrying home. I did not have any umbrella. I had a big coat and I had furs on. There are not any sidewalks on either side of York Road. I always watched for automobiles or for trolley cars or anything, to come along and I heard nothing—no horn was blown or anything, to give anybody any notice, and the next thing I knew I woke up in the Jewish hospital......"

A policeman testified: "Just about 6:05 January 2d, Thursday night, it was raining very hard and I just went across the street at Spencer and York Road and just at the southwest corner I happened to look north and I saw this automobile coming about 30 feet away from me, with the lights shining and I saw an object on the front of the machine and I put out my hands and went over— called for them to stop and when they stopped I saw it was a lady wedged between the bumper and the radiator of the car in a sitting-up position with her head lying on the left mudguard. I then dragged her off and took her to the sidewalk and sat her on the sidewalk and the first thing she asked for when I sat her on the sidewalk was 'where is my muff and pocketbook?'. I......went up to find—to try to see if I could locate the pocketbook and muff that she was speaking about. I walks about maybe 150 to 200 feet north of Sparks street and on the southbound rail lay the muff and about three feet from the muff I found the pocketbook, about three or four feet from the rail." In cross-examination he testified, "Q. From the position that Miss Reaney was on that car, was her head above the radiator where she could be seen from the driver's seat? A. No, sir. Q. That is, her position was such that she would be invisible to the driver? A. That is right." He stated that where he "picked up the muff, on both sides of the street are the traction company incandescent lights. Those both lights were out at that time......I used my flashlight to locate the pocketbook and muff."

Defendant herself testified that just after passing another automobile,—to which we shall refer presently—she "heard a sort of a bumping and my little boy in front who was with me said, 'What is that?' and I said 'It must be a loose cobblestone.' We were then on the cobbles and then I went on. I was still in second gear and just going as slowly as possible. We heard another little bump, and he said, 'I think there is something loose on the car.' I said, 'Yes, I think it is the bumper, and when we get to the top of the hill I will stop under the light and we will fix it......' " After she had almost reached the place where she intended to do so, the policeman stopped her and removed plaintiff. Defendant then for the first time saw plaintiff and said "......I was very much horrified to see such a thing, as I had no idea that anybody was on the front of the car,......" She was an experienced driver and stated that she was driving up hill at the time "between eight and ten miles on that grade—it is a very low-powered car." During cross-examination she testified, "Q. And you know the condition of York Road between Chelten avenue and Spencer street, don't you? A. Yes. Q. You know how pedestrians are required to walk, do you, in using that street? A. Yes. Q. You don't know really when you struck Miss Reaney at all, do you? A. I don't know when the accident happened. Q. The only thing you recall was when you had this bump which you thought was a loose cobblestone and afterwards another and you thought something was loose in the front of the car? A. I thought the bumper had become loosened. Q. The only time you knew Miss Reaney was on the automobile was when Officer Shafer stopped you? A. Yes, when I got out of the car and saw her on the front. Q. What was the condition of your windshield? A. It was raining. It had a little rain on it but it was perfectly clear." We pass as immaterial here, the dispute in the evidence as to whether she became unconscious immediately or not; defendant said after plaintiff was removed from the car

that plaintiff "seemed a little hysterical." Plaintiff must have been carried on the bumper a distance of from 150 to 200 feet; she made no outcry; she must have been sufficiently conscious when removed to make the statements which certain witnesses agree she made concerning her pocketbook and furs; these were located shortly afterward in consequence of what she said and from their location, the place of collision was determined.

There was dispute about the street lights; in cross-examination plaintiff was asked "Q. And on the night in question it was a very dark and rainy one, wasn't it? A. Yes. Q. And very great difficulty to see anybody a great distance away? A. There was a light. Q. Did you see any lights yourself that evening? A. Yes, I did; or I would not walk there." The street car tracks are on each side of the street where the accident occurred. Plaintiff said she was walking on the right side of the street "about two feet from the trolley track......" She had left a street car at the Chelten avenue intersection of York Road and was walking on York Road toward Sparks street, described in the evidence as about two squares from Chelten avenue, and when struck, plaintiff says she had walked "about half way." She testifies that after going about half of that distance she turned around to see whether anything was approaching, and there was nothing. The jury may therefore have found that she had walked about a square when struck. She was walking along a highway ahead of defendant and defendant did not see her. Obviously the jury and not the court must find whether plaintiff walked along the road for about a square as she testified and whether with the street lights, or absence of such lights, considering the heavy rain, defendant should have seen plaintiff so walking in time to avoid a collision. If plaintiff was there as the jury found, defendant according to the evidence must have been driving without being able to see where she was driving, a use of the highway

not consistent with due care for the rights of others lawfully using the highway at the same time. The jury here had evidence that defendant not only never saw plaintiff walking ahead, but never saw her on the front of the car while carrying her from 150 to 200 feet. In Safian v. Ice Company, 66 Pa. Superior Ct. 422, we said, "The act of the driver was negligent under the circumstances, for, if he had looked he would have seen the plaintiff in the street and should have been able to stop......If he did not look as he turned the corner he was equally negligent."

Defendant's inability to see may have been due to darkness and the weather conditions, or to those facts and a third,—the passing of another car. Defendant said, "As I had changed my gear and was going up the steep part of the hill, there was a large touring car came down the hill very rapidly with headlights on just as full as they could possibly be. They, of course, were very blinding and the driver of that car came way over to my side. He did not keep to his right as he should have done. As I was going by in this way, he nearly ran into me, and I made the remark at the time he might have given me a little bit more room. Just after he passed me—it was a very narrow escape, I heard a sort of a bumping and my little boy in front who was with me said, 'What is that?' and I said 'It must be a loose cobblestone.' We were then on the cobbles, and then I went on. I was still in second gear and just going as slowly as possible. We heard another little bump, and he said 'I think there is something loose on the car.'"

On this subject the policeman testified, "And just prior to the time that you crossed the street at Spencer— the time you saw the car on which Miss Reaney was carried—did you see any other car passing? A. Yes, there was a big touring car passed, very near to me. Q. Did they have headlights on? A. Very bright headlights. Q. No dimmers on it? A. No, sir. Q. About how long

had that car passed before Mrs. Jones's car came in sight? A. Probably half a minute to a minute."

Defendant's son said: "Q. Do you remember seeing any other car approach as you were going up the hill? A. Yes, when we began to go up the hill there was a big touring car that came down at the fastest rate of speed and they had awfully bright lights with no dimmers on and they blinded us for almost a minute, I guess, from the top of the hill until it got to the bottom."

The evidence that the lights of a passing car interfered with her vision was of course offered by defendant; it was oral evidence; in one aspect of the occurrences it might explain the accident as happening without fault by defendant; in another it would not so account for it; but we are not permitted to find what inferences shall be made; we cannot deprive plaintiff of her right to have a jury find the facts. None of the cases cited by appellant would have justified the learned court below in taking this case from the jury. In Flanagan v. McLean, 267 Pa. 553, in which plaintiff was unable to testify, it did not appear whether he was struck while using the highway, or whether he was riding on the truck and was injured in being thrown off. It must also be clear from the somewhat detailed statement of the evidence made above that the other cases cited like Presser et al. v. Dougherty, 239 Pa. 312; Davis v. Osborn, 62 Pa. Superior Ct. 291, and Smith v. Transit Co., 252 Pa. 435, holding that the mere fact of collision creates no presumption of negligence, are not applicable where defendant drives ahead, as the jury may have found here, under conditions which prevent her seeing when her duty requires that she must see another lawfully on the highway, with injury resulting in consequence thereof.

By the evidence quoted, it is also clear that the matter of plaintiff's contributory negligence was for the jury. Nor can we agree with appellant's contention that there was a variance.

The judgment is affirmed.